# City of Birmingham *v.* Wills.

*Bill to Enjoin Enforcement of Assessment for Local Improvement.*

(Decided February 17, 1912.  Rehearing denied April 25, 1912.
59 South. 173.)

1. *Equity; Bill; Demurrer; Presumptions; Official Acts.*—The validity of official acts, and the regularity of official proceedings are presumed; hence, a bill to enjoin an assessment for local improvement which does not allege that there was a failure to prepare the assessment roll, to give notice of the time and place at which objections and defenses would be heard, and determined, preliminary to the final adjudication of the assessment (secs. 1377, 1379, Code 1907), that the amount assessed against complainant's property is in excess of the benefits derived or that there was any fraud in the proceeding, or that complainant appeared and objected at any step of the proceeding, is subject to demurrer as these matters must be taken against complainant.

2. *Municipal Corporation; Public Improvements; Assessments; Power to Levy.*—While municipal corporations are without inherent power to levy assessments for public improvement, and the authority therefor must be found in a statute, and the statutory authority strictly followed, yet the clearly expressed legislative purpose, within constitutional limitations, must be given effect, including those incidental and inferential powers essential to carry into effect those powers specifically granted.

3. *Same; Preliminary Hearing of Objection.*—Under sections 1361, 1362, and 1364, Code 1907, the first hearing is not jurisdictional, but merely advisory, it not being contemplated that objections or protests going to the validity of the ultimate assessment to be made shall be determined, but merely affording the property owners an opportunity to interpose objections, yet permitting the governing body of the municipality to proceed, notwithstanding the objections.

4. *Same; Preliminary Notice.*—The Legislature could, under the Constitution, have left the question of whether public improvement should be made, to the discretion of the governing body of the municipality without the preliminary notice to the property owners required by secs. 1362, 1363, 1364, Code 1907.

5. *Same; Constitutional Provisions.*—A property owner has the right to insist only that public improvements be undertaken by legislative authority, and that the property be benefitted to an extent equal to the amount assessed against it.

6. *Same; Assessments; Hearing; Necessity.*—Whether property has been benefitted by a public improvement to an extent equal to the assessment against it, is a judicial question, and on this question the property owner is entitled to notice and a hearing.

[City of Birmingham v. Wills.]

7. *Same; Preliminary Proceedings; Estoppel to Deny.*—While the preliminary notice to property owners of a proposed public improvement, and all other steps preliminary to the notice of assessment, and the assessment itself must be observed (secs. 1361, et seq. Code 1907), yet it may be waived and a person failing to appear or object at the final hearing is estopped under section 1281, Code 1907 from attacking the validity of the assessment, either for defects and omissions in the preliminary proceedings or for mere errors or irregularities.

8. *Quieting Title; Cloud; Public Improvement; Assessment.*—A bill to enjoin the enforcement of a municipal assessment for public improvements cannot be maintained as a bill to quiet title or remove a cloud where it appears that the lien claimed by the city is a valid lien, that the city does not dispute complainant's title or claim any interest in the property, except that given by the assessment lien, and that it is proceeding to enforce such lien in the manner prescribed by law.

(Simpson, J., dissents.)

APPEAL from Birmingham City Court.

Heard before Hon. H. A. PEARCE.

Bill by E. D. Wills and others against the City of Birmingham to enjoin the city from enforcing the collection of an assessment for public improvement, and to cancel the lien as cloud on title. From a decree granting relief respondent appeals. Reversed and remanded.

ROMAINE BOYD, for appellant. There is no equity in the bill.—*McCullough v. Maryland,* 4 Wheat. 316; Coley's Const. Lim. 587-8; Page & Jones on Taxation, sec. 918; sec. 1381, Code 1907. In the absence of an averment of want of notice and other acts, the law will presume notice and a compliance with the statutory requirements since the validity of the official acts, and the regularity of official proceedings are always presumed. —44 Pac. 915; 33 Pac. 987; 60 Ill. App. 654; 48 Ill. 296; 102 N. W. 529; 34 Md. 558; 82 N. W. 495; 15 N. E. 795; 19 N. E. 184; 7 N. E. 108; 38 N. E. 33; 16 N. E. 108; 47 Cal. 42. It therefore only remains to consider the constitutionality of section 1381, Code 1907, and this section is fully sustained by the following authority:

A. The wide discretion of the Legislature in determin-
ing the nature and kind of notice to be given.—*City of
Decatur v. Brock,* 54 South. 209; 210 U. S. 177; 80 N.
E. 127; 181 U. S. 39; 204 U. S. 241; 2 Elliott on Roads
& Streets, sec. 738, and cases cited. B. The power of
legislatures to prescribe the effect of irregularity.—188
Mass. 223; 114 N. W. 1119; 27 Atl. 801; 82 N. E. 633;
5 Am. St. Rep. 637; 94 Wis. 561. C. The power of the
Legislature as to fixing notice, hearings, or the giving or
prohibiting of appeals is almost unlimited.—164 U. S.
112; 191 U. S. 510. D. The power to make final assess-
ment is properly given the city council.—113 Ill. 296;
24 Pac. 771; 54 Pac. 774. Personal notice is not nec-
essary.—*Montgomery v. Birdsong,* 126 Ala. 632; *Harton
v. Avondale,* 147 Ala. 458; Cooley on Taxation, 62. E.
It is within the power of the Legislature to declare what
shall constitute a lien, within constitutional limitation.
—19 A. & E. Enc. of Law, 23. In this case the property
owner had his day in court, and the statute was com-
plied with.—*City of Woodlawn v. Durham,* 50 South.
356. If complainant has any standing in any court, it
would be in a court of law, and his remedy would be
by certiorari.—*City of New Decatur v. Brock, supra;
Montgomery v. Birdsong, supra; Garner v. City of An-
niston,* 2 Ala. App. 389. The bill is not maintainable
as a bill to quiet title.—*City of Ensley v. McWilliams,*
145 Ala. 159. The facts in the bill do not constitute a
cloud on title.—*Birmingham v. McCormick,* 49 South.
Ill; *Parker v. Boutwell,* 119 Ala. 297; *Ensley v. Mc-
Williams, supra; Tarrant v. Mobile,* 101 Ala. 559. The
bill presents a strong case of equitable estoppel.—Her-
man on Estoppel, sec 1221; 2 Elliot on Roads & Streets,
sec. 736, 21 N. E. 1083; 16 N. E. 501; 30 Ind. 1192; 65
Atl. 198; 53 Atl. 199. As to the sufficiency of descrip-
tion of plans, specifications, materials, termini, etc.,

see: *Harton v. Avondale, supra;* 1 Elliott on Roads & Streets, sec. 621, 626; 49 N. E. 574; 45 N. E. 570; 56 N. W. 97; 5 Atl. 152. In conclusion counsel insist that the Legislature constitutionally provided a waiver of defects and omissions, that appellee waived all these matters, and that sec. 1381, Code 1907, is conclusive of this case.—103 N. W. 381; 92 N. W. 657; 15 Pac. 825; 84 Pac. 51.

F. E. BLACKBURN, and RICHARD H. FRIES, for appellee. The doctrine of presumption that public officials have done their duty does not apply to tax matters.— *Oliver v. Robinson,* 58 Ala. 53; 16 It. 505; Blackwell on Tax Title, 42-72. A judgment or record void for want of jurisdiction may be assailed collaterally or directly.— Freeman on Judgments, sec. 120; 30 Ill. 119. Consent cannot confer jurisdiction in tax matters.—*Scales v. Alvis,* 12 Ala. 617; *Elliott v. Eddings,* 24 Ala. 508; 40 N. E. 752; 28 Cyc. 1014. Every requirement of the statute must be fully complied with to confer jurisdiction, as there is no inherent power in a municipality to make public improvements and assess private property therefor.—*Garner v. City of Anniston,* 2 Ala. App. 389. Whether section 1381 be termed consent, waiver or estoppel, it simply means that the property owner will not be heard to complain and make objection after a certain specified time.—103 N. W. 381; 92 N. W. 657; 41 N. W. 617; 108 N. W. 1036; 111 N. W. 432; 134 Ir. 97; 45 N. W. 710; 15 Pac. 835; 32 Ill. 192; 84 Pac. 52; 27 Pac. 435; 69 N. E. 150; 40 N. E. 755; 2 Page & Jones on Taxation, sec. 1015 and 1030; 28 Cyc. 1014; 81 South. 407. The ordinances and assessments are invalid, as by the exceptions therein provided for the exact amount and extent of improvement are left in doubt and uncertainty.—38 Pac. Rep. 881; 45 Am. St.

Rep. 34; *Coffman's Case,* 55 South. 500. On the general proposition of delegation of authority to any subordinate officer of the municipality rendering void the entire proceedings, see *Harton v. Avondale,* 147 Ala. 458; 33 N. E. 602; 2 Page & Jones, sec. 860; 62 N. E. 780; 6 N. Y. 92; 46 Cal. 68; 47 Pac. 777; 46 N. E. 794; *City Council of Montgomery v. Foster,* 133 Ala. 587. The bill contains equity as it contains all the necessary averments required by sections 5443 and 5444, Code 1907; *Coffman's Case, supra; Adler v. Sullivan,* 115 Ala. 582; *Chaney v. Nathan,* 110 Ala. 255; *Whittaker v. VanHoose,* 47 South. 741; *Interstate B. & L. Assn. v. Stocks,* 124 Ala. 109. It is a well settled rule that equity does not work by piece meal, and that having acquired jurisdiction for one purpose, will retain it for complete relief.—*Whaley v. Wilson,* 112 Ala. 627; *Kilgore v. Kilgore,* 103 Ala. 614; *Va. Co. v. Hail,* 93 Ala. 542; *Booth v. Foster,* 111 Ala. 312. The ordinance being void, the assessment made under it is invalid, and remains a cloud upon title of complainant that equity has jurisdiction to remove.—*City of Montgomery v. Foster,* 133 Ala. 587.

SAYRE, J.—The bill in this case was filed for the purpose of preventing by injunction the enforcement of an assessment for local improvement. The proceeding for the assessment was begun by the city of Graymont. Pending the improvement, that city became incorporated into the city of Birmingham which thereby succeeded to all its powers, rights, and liabilities, and thereupon carried the work to completion. In his bill complainant avers that the proceedings, by which the defendant and its predecessor, the city of Graymont, sought to fasten a lien upon his property, failed to follow the statute made for such cases, and were defective

in various respects: The original ordinance, putting
the improvement on foot, fails to sufficiently describe
the general character of the material to be used in
making the pavement provided for; it fails to describe
sufficiently the nature and extent of the work proposed;
it provides that no sidewalks are to be paved where,
in short, the work had already been done by the abut-
ting property owner; it delegates the power and au-
thority of the city council of Graymont to the city en-
gineer in that he is required to fix and determine spec-
ifications; neither the grade of the said street, Smithers
Boulevard, nor the grade of the curb along the same,
was ever legally established by ordinance, resolution, or
otherwise, prior to the adoption of the resolution pro-
viding for the improvement. He avers also that the
final resolution of the board of commissioners of the
city of Birmingham, fixing and making final the assess-
ment, is illegal for various reasons: Because the orig-
inal resolution adopted by the city council of Gray-
mont never became effective by reason of the fact that
said resolution was not published in any newspaper nor
posted within the city of Graymont as required by law;
because said original resolution was defective for the
reasons already stated; because the specifications pre-
pared by the city engineer called for work and mate-
rials not within the contemplation of the original reso-
lution; because no estimates of the cost of the improve-
ment were made and filed with any officer of the city of
Graymont prior to the adoption of the final resolution
ordering the improvement to be done; because during
the progress of the work the materials to be used were
changed, and its cost to the owners of abutting proper-
ty was increased by widening the driveway to be paved
and by altering the curb lines. And for each of these
reasons, the averment is, the assessment against com-

plainant's property is illegal, null, and void. The court below overruled a demurrer, assigning many grounds interposed by the city of Birmingham, and this appeal seeks to review that ruling.

An outline of the statute authorizing improvements of this character by municipal corporations, the cost of which may be assessed against the abutting property, will make sufficiently plain the nature and extent of the departure from statutory requirement of which the appellee complained in the court below. The entire statute is to be found in sections 1359-1420 of the Code of 1907. Sections requiring attention in this connection may be epitomized as follows: There must first be an ordinance or resolution determining the execution of the work (but only tentatively, as will appear), describing its nature and extent, the general character of the materials to be used, the street to be improved, and the location and terminal points of the improvement. The resolution must direct full details, drawings, plans, specifications, and surveys of the work, and estimates of the cost be prepared, or plans already prepared may be adopted.—Code, § 1361. Details, specifications, etc., and estimates must be placed on file where property owners may examine same, and the ordinance or resolution shall appoint a time, not less than two weeks after the first publication thereof, to hear objections to the improvement, the manner of making the same, or the character of the material to be used. Section 1362. The ordinance or resolution must be published once a week for two weeks in some newspaper published in the city or town, or, if there be no such newspaper, in a newspaper of general circulation therein, or by posting for two weeks in three public places therein. Section 1363. At the meeting property owners shall be heard to object, and such objections must be considered,

and then the council may confirm, amend, modify, or rescind the original ordinance or resolution.  If a majority of property owners object, the improvement shall not be made unless ordered by a two-thirds vote of those elected to be council.  Section 1364.  Before the passage of the final resolution or ordinance, if the grade of the street has not been established, or if the improvement necessitates a change, the grade of the street and of the curb on each side shall be fixed by ordinance.  Section 1366.  Bids shall then be advertised for and the work may be let to contract.  Section 1367. The city engineer· must supervise the work.  Section 1368.  After completion and acceptance of the work, the cost,. or any part thereof, may be assessed in fair proportion against abutting parcels of land to the extent of the increased value of such parcels by reason of the special benefits derived from such improvement. Sections 1370, 1371.  A roll of property is then prepared showing each parcel and the. amount to be assessed against it.  Section 1375.  The roll must be entered upon a public record.  Section 1376.  The record book is to be delivered to the city clerk who shall give notice by publication one time in some newspaper published in the municipality, or of general circulation therein, that the assessment roll has been delivered to him, and is open to inspection.  Section 1377.  The notice must contain other information as to the character of the improvement.  Section 1379.  "At a time and place therein mentioned, not less than twenty days from the date of publication, the council will meet to hear and determine any objections or defense that may be filed to such assessment or the amount thereof." Section 1378.  Owners may appear at any time on or before the date named, or at the meeting, and file "any objections or defense to the proposed assessment against

said property, or to the amount thereof, and persons who do not file objections in writing or protests against such assessment shall be held to have consented to the same. Section 1381. The council must hear and pass upon objections. Section 1382. In case defects appear, supplementary proceedings of the same general character as those prescribed in the first place may be had to cure such defects. Section 1380. The council then proceeds to fix by order or resolution the amount of the assessment against each lot or tract of land described and included in said assessment roll, which shall be a lien thereon. Section 1834. Any person aggrived may appeal to the circuit court or any other court of like jurisdiction. Section 1389. On the appeal the court "shall determine whether or not such assessment exceeds the increased value of such property by reason of the special benefits derived from the improvement, and shall render judgment accordingly." Section 1394. An appeal to this court is provided for. Section 1396.

Let it be noted at this point that there is no averment that there was any defect or default in the notice required by sections 1377 and 1379 in respect to the preparation of the assessment roll and the time and place at which objections and defenses would be heard and determined preliminary to the final adjudication of the assessment against each parcel of property and the amount thereof, nor is it complained that the amount assessed against complainant's property is in excess of the benefits derived from the improvement, nor is there any averment of fraud in the proceedings. Nor does it appear that complainant appeared at any stage of the proceeding for the purpose of interposing objections or defense. The validity of official acts and the regularity of official proceedings are always to be

presumed. For this reason (*Page v. Baltimore,* 34 Md. 558; *Hellman v. Soulters,* 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057; *Brown v. Chicago,* 117 Ill. 21, 7 N. E. 108; *Montgomery v. Wasem,* 116 Ind. 343, 15 N. E. 795, 19 N. E. 184; *Martin v. Oscaloosa,* 126 Iowa, 680, 102 N. W. 529; *Barkley v. Oregon City,* 24 Or. 515, 33 Pac. 978), and because on demurrer the pleader is presumed to have stated his case as favorable to himself as the facts would admit, these things must be taken against the complainant. Complainant attacks the assessment and the proceedings leading up to it collaterally. His contention is that the defects alleged in the proceedings were jurisdictional and that their presence is sufficient to render the resultant assessment void for all purposes.

Municipal corporations possess no inherent power to levy assessments for local improvements. There was no such power at the common law. In order therefore to justify such assessments, it is necessary that authority for them be found in legislative act; the presumption being that, in the absence of legislative grant providing for a special source of revenue for public improvements, funds for that purpose are to be raised by an exercise of the power of general taxation. Local assessments are in derogation of the common-law rights of attingent property owners, and for that reason it is commonly said that the statutory authority under which they are levied is to be strictly construed and followed. It is said that the mode of procedure prescribed by the statute becomes a measure of the power itself, and that any substantial deviation therefrom will render the assessment ineffectual to fasten a lien upon the property affected by the improvement. These considerations, however, do not prevent the application of well-settled rules of statutory construction, and the

clearly expressed legislative purpose, within constitutional limitations, must be given effect, including those incidental and inferential powers necessary as means of carrying into effect the power specifically granted. Judicial opinions have differed as to what defects, lapses, or divergences from statutory methods ought to be considered as jurisdictional so that their occurrence operates to invalidate the proceeding, and as to what, on the other hand, ought to be taken and held for mere errors and irregularities not going to the validity of an assessment made in a bona fide effort to follow statutory power. On this subject there is a great number of adjudicated cases. Many of them are cited to sections 775, 776, and 777 of the recent work of Page & Jones on Taxation by Assessment. But for the most part they deal with statutes in essential respects different from ours. In the view we have taken of our statute and the proceeding involved in this case, we have not found it necessary to draw any such distinction in respect to the defects alleged in the bill, for we have placed our judgment upon complainant's failure after due notice to object, when and where he had opportunity, as a statutory estoppel to now complain in the manner and form adopted in the filing of this bill; such estoppel having been declared by the Legislature in the due exercise of its constitutional power to enact laws.

So far as concerns any question raised on this appeal, the Legislature in providing a method of local assessments needed to consult only two constitutional provisions. The one relates to due process and requires that the owner of the property against which an assessment is proposed shall have reasonable notice and a hearing—shall have his day in court—the other forbids that any city, town, or municipality shall make any as-

sessment for improvements against abutting property in excess of the increased value of such property by reason of the special benefits derived from such improvements.

The statute discloses a scheme carefully devised (though its provisions are not stated at all points in logical sequence), and having in view the purpose to conclude the property owner unless he appears to contest the final assessment, and this, we think, with due observance of constitutional guaranties. As has been noted already, complainant does not aver lack of due notice to appear and defend against the final assessment. Nor does he deny that he allowed the assessment to go against him by default. True, he complains that the notice, required by the statute (sections 1362, 1363) as preliminary to action on the part of the city council confirming the original ordinance or resolution by which it was finally determined to proceed with the work, was not given as required by law. Without impairing the argument for our position, we may assume that it was not given at all, for that default might have been brought to the attention of the governing board of the city of Birmingham at the hearing fixed for the final determination of the assessment. As for the right to confirm, amend, modify, or rescind the original ordinance or resolution, the first hearing provided for by the statute is not jurisdictional, but advisory only. The statute does not contemplate at this point that any objections or protests going to the validity of the ultimate assessment shall be determined. It affords to property owners in general an opportunity to present in advance such objections as they may deem proper to the policy of constructing the work at all or in the manner proposed. The city council has a perfect right to proceed notwithstanding such protests as may then

be made. As said by the Supreme Court of Indiana concerning a statute similar to ours, this provision for a preliminary hearing "is designed to prevent the city authorities from entering inconsiderately upon the construction of expensive improvements, without affording the property owners, who are in the end to pay for them, the opportunity to present their objections at the outset, which are intended to be rather advisory to the common council than otherwise. * * * The right to a hearing is secured to each property owner by another provision of the act."

As a matter of constitutional right, the Legislature might have left the question whether the improvement should be made to the discretion of the city council without preliminary notice to the property owners. The theory of the local assessment, or betterment tax as it is frequently called, is that the individual property owner receives in increased value as much as he contributes.

The only considerations upon which the property owner has a constitutional right to insist are these: That the improvement be undertaken by legislative authority, without which the attempt to assess its cost against property would be a usurpation of the power to tax, and that his property shall be benefitted to an extent equal to the amount assessed against it. Whether his property has been so benefited is essentially a judicial question upon which the property owner is entitled to notice and a hearing.—*Barber Asphalt Co. v. Edgerton*, 125 Ind. 455, 25 N. E. 436. Said the Indiana court in another case: "It is essential to the public good that the necessity for street and other improvements, and the cost of making them, and such other proceedings as are necessary to insure the prompt execution of the work, be determined and taken in a com-

[City of Birmingham v. Wills.]

paratively summary way.　*　*　* If, therefore, the
law provides for giving notice and for a method where-
by the property owner may ultimately challenge the
correctness of the assessment made against his prop-
erty, in respect to whether it was made in good faith,
without intervening mistake or error, and according to
the method and under the safe-guards provided by law,
the constitutional provision is deemed satisfied."—*Gar-
vin v. Daussman,* 114 Ind. 429, 16 N. E. 826, 5 Am. St.
Rep. 637. In the third edition of Elliott on Roads and
Streets, § 699, the authors say, with citation of nu-
merous authorities, that, "while we regard notice as
indispensable, we do not believe that it need always
be given during the initiatory or original proceedings;
on the contrary for at some stage of the proceedings
and in such a mode as to give the party an opportunity
to be heard before a final conclusion is reached, it will
be sufficient. If an appeal is given, clogged by no un-
reasonable or embarrassing burdens, we suppose that
the fundamental principle of which we have spoken is
not deviated from. Indeed, it may be stated generally
that, if a full opportunity to be heard is given before
the assessment can be finally collected or enforced,
whether before the board or council on an appeal, or
even in a suit to foreclose, it is sufficient to satisfy the
constitutional provision requiring due process of law."
And at another place in the same work it is said: "In
providing the mode of procedure, the Legislature has
a very broad discretion, and, so long as it violates no
provision of the Constitution, its enactments must be
respected and enforced. It is within the power of the
Legislature to declare what steps shall be taken, and,
having this power, it necessarily follows that it may
provide that parties, by failing to object, shall be held
to have waived objections. If there is power to pre-

scribe the acts that shall be done there is also power to declare when the performance of such acts shall be dispensed with, when they shall be regarded as waived, or when the party shall be held estopped to aver that they have not been performed." Section 738. See, in this connection, *Montgomery v. Birdsong,* 126 Ala. 632, 28 South. 522, and *Harton v. Avondale,* 147 Ala. 458, 41 South. 934.

The preliminary notice, and all those other steps preliminary to the notice of the assessment and the assessment itself, about the absence or perversion of which the bill complains, are provisions of legislative grace. Being writen in the statute, they must be observed or the property owner may at the final hearing have the benefit of the omission of such of them as may be considered essential where there has been no waiver. But their omission may be waived. "A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection."—*Sentenis v. Ladew,* 140 N. Y. 463, 35 N. E. 650, 37 Am. St. Rep. 569; *Martin v. State,* 62 Ala. 240; *State v. McFarland,* 121 Ala. 45, 25 South. 625; *Stone v. State,* 160 Ala. 94, 49 South. 823, 136 Am. St. Rep. 69; *Noel v. State,* 161 Ala. 25, 49 South. 824; *Wolff v. McGaugh,* 175 Ala. 299, 57 South. 754. Now the statute, after providing for the preparation of the assessment roll, by which for the first time the expense of the improvement is spread over the property, the proceeding is individualized and given the character of a judicial proceeding to fasten a lien for a specific amount upon a specific parcel of property, and, after providing for due process by requiring notice of the

proceeding, provides a competent tribunal with power to judicially determine all questions arising by requiring that "the council will meet to hear and determine any objections or defense that may be filed to such assessments or the amount thereof," and further determines the judicial nature of the finding by providing that "persons who do not file objections in writing or protests against such assessments shall be held to have consented to the same." Sections 1378, 1381. Jurisdiction of the subject-matter is conferred by the statute. Jurisdiction of the property and its owner in each case is prepared by the passage of preliminary resolutions or ordinances and by all those essential steps required to be taken prior to the time when the proceeding takes on a judicial aspect. But in taking these steps the council exercises a business or administrative power. —*Brown v. Central Bermudez Co.*, 162 Ind. 452, 69 N. E. 150. The effect of the statute is to make material defects or omissions in them just cause for an abatement of the proceeding, but its intention is to destroy all distinctions between defects or omissions and mere errors or irregularities in the preparatory steps in those cases in which the owners, after due notice and an opportunity to present every defense, remains silent and inactive. However harsh such proceedings may seem, and however oppressive the result may be in particular cases, the consequences are not more extraordinary or unconscionable than such as may be observed in cases where parties allow the judgments of customary courts of justice to go for their adversaries by default in the usual course of judicial procedure. Where in such cases inequitable results may seem to follow, they are fairly chargeable, not to the law which gives every man his day in court, but to the laches of the property owner. The enactment in question impinges upon no

constitutional right and is an expression of the sovereign will which it is the duty of the courts to respect and observe.

The constitutional sufficiency of the notice of the final assessment prescribed by the statute is not questioned. It was approved in *Decatur v. Brock,* 170 Ala. 149, 54 South. 209.

Our case of *Woodlawn v. Durham,* 162 Ala. 565, 50 South. 356, sustains the principle of our conclusion in the instant case. It seems to go much further, for in the charter of Woodlawn there was no express provision for an estoppel. The case holds that, in an action by the city by independent bill in equity to enforce the lien of an assessment levied under that charter, the property owner, after failing to appear upon due notice before the council sitting for the confirmation of assessments, cannot in defense of the action litigate the questions whether the improvement was well done, or done in accordance with the specifications and contract between the city and the contractors, or in accordance with the charter and ordinance provisions, or that the work done was of no benefit to his property. We have however, felt that it was proper to go into the question more at length because of the different provisions of the Code, and because it is stated at the bar, and no doubt correctly, that there was in that case no brief or argument for the appellee; at any rate, the opinion in that case was not written to meet the argument now advanced by appellee.

Appellee lays stress upon *Owens v. Marion,* 127 Iowa, 469, 103 N. W. 381, some other cases decided by the Supreme Court of Iowa, on *Auditor General v. Calkins,* 136 Mich. 1, 98 N. W. 742, and some other cases from other states which do not seem to require special notice. In the first-named case the Code of Iowa is quoted as

follows: "All objections to error, irregularities, or inequalities in the making of special assessments, or in any of the prior proceedings or notices not made before the city council at the time and in the manner herein provided for, shall be waived except where fraud is shown." The court said that of. course this statute did not cover defects which went to the validity, rather than the legality or regularity, of the proceedings, and held, in effect, that notice of a provisional assessment against separate lots, for which the statute provided, was jurisdictional as for anything contained in the quoted section. Such also seems to have been the ruling in the Michigan case, and in several of the cases cited from other jurisdictions. In a number of the cases cited by appellee we find nothing but some discussions of the operation and effect of equitable estoppel. They are not at all in point. In *Zalesky v. Cedar Rapids*, 118 Iowa, 714, 92 N. W. 657, it was held that a provision for reassessment (section 836 of the Code of Iowa, quoted by appellee in the case at bar) did not apply in a case where the assessment sought to be corrected was a nullity.

Many cases are cited pro and con. They have not been of much service, for, while involving questions as to the effect of irregularities and omissions in procedure upon the validity of local assessments, they are concerned about different statutes and approach them from a different viewpoint, assessing councils and boards being considered as tribunals of extraordinary and limited jurisdiction, as in general they unquestionably are, and were properly so considered in most of the cases; there seldom being any occasion for the courts while considering statutes prescribing a preliminary procedure to refer to the fact that the Legislature, in the due observance of constitutional guaranties,

may at the same time provide that the findings of such boards shall be conclusive in the absence of objection duly made after notice. We note, however, as much in point, that in Minnesota, where the statute provides that, after notice and a hearing offered, "no omission, informality, or irregularity in or preliminary to the making of any assessment for any local improvement shall, after confirmation, affect the validity of such assessment, unless objection specifying the grounds thereof shall have been made in writing and duly filed with the village recorder on or before the date of such confirmation," the Supreme Court, in a case which it was said presented the extraordinary spectacle of the expense of a public improvement in excess of the value of the property against which the expense was assessed, observing that possibly and probably there were irregularities in the proceedings whereby the assessment was levied, which, if objected to in due season, might have proved fatal, said that it was essential to the due administration of justice that the owner who made no protest or objection should be concluded by the proceeding against him.—*West Duluth v. Norton,* 63 Minn. 497, 65 N. W. 935.

In the appellee's bill and brief there is reference to the jurisdiction of chancery to remove clouds upon title and to compel the determination of undisputed claims to land as giving equity to his bill. On the fact stated in the bill that the improvement was undertaken under the authority of the city council of Graymont and subsequently carried to completion under the authority, however improperly exercised, of the board of commissioners of the city of Birmingham, and on the other facts not denied in the bill, and for that reason assumed against the appellee, that appellee had due notice of the hearing for final assessment and an op-

portunity to be heard, and failed to then make objection or defense, no fraud being charged,' we have held the assessment proof against collateral attack. There is therefore no room for the exercise of the jurisdictions here referred to for relief. There is no occasion to remove a cloud, for the alleged cloud is in law and fact a valid lien. There is no legitimate appeal to the statute for quieting title, for it is not shown that defendant denies or disputes complainant's title. Nor is there any intimation in the bill that defendant claims or is reputed to own the property. On the contrary, it clearly appears that defendant is recognizing complainant's title by proceeding against the complainant as owner. Nor can it be said that defendant claims an interest therein, or to hold a lien or incumbrance thereon, other than that stated in the bill which the defendant ought to be required to set forth and specify. On the contrary, it is perfectly clear upon the bill that complainant is seeking to be rid of the lien claimed by defendant in virtue of the assessment proceeding and nothing else. Nor can it be said that as to the lien so claimed no suit is pending to enforce or test its validity. On the contrary, it appears that the city is proceeding to perfect and enforce its lien in the manner prescribed by statute, and, so long as it follows the statute and insists only upon its legal rights, there can be no interference by a court of equity. Complainant's call upon the defendant to set forth and specify its said lien or incumbrance, under the circumstances shown by the bill, is a perversion of the statute for quieting title, and merely evinces a desire to shift the burden of averment and proof in respect to the validity of the assessment proceeding contrary to the spirit and letter of section 1381 of the Code and the decisions on that point to which we have referred.

The case of *Birmingham v. Coffman*, 173 Ala. 213, 55 South. 500, is not in conflict with what we have said in the case at bar in respect of the propriety of a bill to remove a cloud or the remedy under the statute for quieting title. The most that can be said of it is that it assumes that a failure to fix the grade of a street in advance renders an assessment void. It may be conceded that a bill will lie to remove the cloud of a void proceeding of the sort. But we now hold that the effect of section 1381 of the Code is to save the proceeding notwithstanding such defect in it as was alleged in the *Coffman Case*. If section 1381 was urged upon the court in that case, or if it had the slightest attention, there is no intimation of the fact in the opinion. We take it, therefore, either that it appeared in that case that the property owner had insisted upon the defect in the proceeding at the final hearing for assessment and his insistence had been denied, or that counsel for the city of Birmingham did not bring section 1381 to the attention of the court.

Our opinion is that the general demurrer to appellee's bill should have been sustained.

Reversed and remanded.

ANDERSON, MCCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur. SIMPSON, J., dissents. DOWDELL, C. J., not sitting.

SIMPSON, J.— (dissenting.)—The powers of a municipal corporation to assess property to pay for the improvement of streets being entirely statutory, it must be true, in accordance with well-recognized principles of law, that, when the statute lays down certain prerequisites to the exercise of the power by the municipal authorities, these prerequisites must be jurisdictional,

so that, until they are complied with, the municipality is without power to act, and any action without them is void.

Section 1361 of the Code of 1907 requires, as a prerequisite, that the council shall adopt an ordinance or resolution "describing the nature and extent of the work, the general character of the materials to be used, and the location and terminal points thereof, and the streets, avenues, alleys, or other highways, or parts thereof, and shall direct that full details, drawings, plans," etc., be made, etc. Section 1363 requires the publication of said ordinance, and section 1364 provides that at the meeting all persons whose property may be affected may appear and object or protest against said improvement, the material to be used, etc., and that, if a majority of the abutting owners object to the proposed improvement, "the improvement shall not take place unless ordered by a two-thirds vote of those elected to the council." I hold that the adoption of such an ordinance or resolution, and the notice giving the property owners the opportunity to appear and object, are jurisdictional, and without them the entire proceedings are void.

After providing for making out the assessment roll, after the work has been done, giving notice that such roll has been made out, fixing the time for hearing objections, giving notice, etc. (sections 1375-1380), it is provided by section 1381 that the owners may appear "and file * * * any objections or defense to the proposed assessment against said property or to the amount thereof, and persons who do not file objections in writing or protests against such assessment shall be held to have consented to the same." This evidently refers only to the "assessment"; that is, to the correctness of it, whether it is properly proportioned among

the property owners, whether it exceeds the amount allowed by law, etc., and cannot refer to the question as to whether the work shall be done at all or not, on which, as seen, the property owner had a right to be heard before the work was done. The consent therein referred to refers only to those matters, and not to jurisdictional matters, without which the municipality is powerless to act.

This construction of the statutes is not only consonant with recognized principles of construction, but is shown to be correct by the provisions of the statute in regard to appeals to the circuit court.

Section 1393 provides that the introduction of the transcript of proceedings "shall be prima facie evidence of the correctness of such assessment," and that the property and persons are justly indebted, etc. Section 1395 provides that, if by reason of any technical irregularity or defect in the proceedings "the assessment has not been properly made," the court may nevertheless make the expenses incurred a charge on the lot, under certain conditions, thus showing clearly that all of these later sections refer only to the proceedings for the assessment and not to the jurisdictional facts.

For these reasons I dissent from the opinion.